OPINION
{¶ 1} Defendant-appellant, Andre K. Battle ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas in which the court denied his petition for post-conviction relief without an evidentiary hearing.
 {¶ 2} The pertinent factual and procedural history of the case are as follows:
 On January 10, 2002, appellant was charged under a multi-count indictment arising out of an incident in which two individuals robbed a Dairy Mart store in Reynoldsburg, Ohio. The matter came for trial before a jury beginning December 9, 2002. The state's witnesses included appellant's alleged *Page 2 
accomplice, Jack McCague, and Dairy Mart employees Ravindra Reddy and Jawwad Ali.
 On January 3, 2002, at approximately 12:55 a.m., Dairy Mart clerks Reddy and Ali were preparing to close the store when a black male entered, pulled a mask down over his face, and pointed a gun at Ali, forcing him into a back room where a safe was located. When Ali indicated he did not know how to open the safe, the assailant struck him with the gun and threatened to shoot him.
 The other store clerk, Reddy, thinking the assailant did not notice him, ran outside the store where he encountered a white male, identified at trial as McCague. Reddy assumed that McCague was a customer, and he asked the man for help, but McCague pulled out a handgun and ordered Reddy back inside the store. Reddy opened the cash register and McCague took the money, totaling $ 160. McCague also took Reddy's wallet, which contained $ 39, as well as a bag containing Reddy's personal belongings, including his checkbook and phone cards.
 McCague's accomplice then told McCague to bring Reddy to the back room. When Reddy entered the room where the safe was located, he observed this man hitting Ali in the face and kicking him; the assailant ordered Ali to open the safe, and he threatened to shoot him if Reddy did not assist in opening the safe. Reddy indicated that the workers did not have access to the safe, at which time the man walked over to Reddy and hit him. He then took Ali's wallet and ordered the clerks to lie on the floor. The man told McCague to "go outside, take all of our things and * * * check whether anybody is outside." (Tr. 42.) The man indicated that he was going to shoot the clerks before he left. Reddy subsequently heard someone walking away from the door, and after approximately two or three minutes the clerks got up and called the police.
 Within minutes of the robbery, two police cruisers responded to a dispatch regarding the incident. As the cruisers approached the area of the Dairy Mart store, a vehicle without headlights sped out of a nearby apartment complex, nearly colliding with one of the cruisers. The officers stopped the vehicle, which contained McCague and a man identified at trial as appellant. The officers ordered the two men out of the car, and one of the officers noticed a handgun on the *Page 3 
floorboard of the passenger seat, and another handgun directly next to the passenger seat. The officer also observed a plastic bag containing money and phone cards. The officers subsequently learned that the vehicle belonged to appellant.
 As a result of the incident, McCague entered a guilty plea to one count of aggravated robbery, with a firearm specification, and received a sentence of eight years incarceration. As noted, McCague testified at trial on behalf of the state. McCague first met appellant in July or August 2001. McCague's girlfriend at the time was Lainie Slaughter, and Slaughter had a friend, identified as Paula, who dated appellant. McCague and his girlfriend lived at Paula's apartment.
 McCague gave the following account of the events surrounding the Dairy Mart incident. On January 2, 2002, during the evening hours, McCague was in Paula's apartment, where he had taken the drug "Ecstasy." Appellant later drove over to Paula's apartment in his red Cavalier. McCague and appellant were talking, and McCague "had the idea of getting money." (Tr. 129.) Appellant and McCague subsequently left the apartment to procure two handguns from a friend of McCague.
 After obtaining a .45 caliber handgun and a .380 caliber handgun, they drove around and eventually decided to stop at a Dairy Mart store located on Channingway Boulevard. McCague was aware that the store closed at 1:00 a.m., and he also knew the employees would be taking money out of the register at that time. McCague took the .45 caliber weapon and waited outside the store while appellant took the .380 caliber gun and went inside. When one of the employees attempted to flee the store, McCague pulled his gun on the clerk and made him go back inside. The clerk then emptied the cash register for McCague, and McCague took the clerk's wallet. He heard a voice from the back room saying, "I'm gonna kill." (Tr. 137.) McCague then forced the clerk to the back room where the safe was located, and ordered the clerk to open the safe. Appellant and another clerk were already in the back room, and McCague heard the clerk tell appellant, "don't hit me, don't hit me no more." (Tr. 136.) They were unable to get the safe open. At that point, McCague was "kind of scared, I didn't know what to do. I was debating whether I should run or stay there." (Tr. 136.) *Page 4 
 McCague eventually exited the back room, grabbed a wallet on the counter and ran out of the building to appellant's car. A few seconds later appellant was also at the car, and drove back to the parking lot of the apartment where they searched through the bag containing the items taken from the store. The two men then decided to leave the area, but appellant forgot to turn on the car's headlights, and as he exited the apartment complex his vehicle almost struck a police cruiser. At trial, McCague identified a "dude rag" that appellant was wearing at the time of the incident.
 Appellant did not call any witnesses on his behalf, but a surveillance tape taken from the Dairy Mart store was played during appellant's case-in-chief. * * *
State v. Battle, Franklin App. No. 03AP-39, 2003-Ohio-4687, ¶ 2-11 ("Battle I").
 {¶ 3} Following the jury trial, appellant was found guilty of three counts of aggravated robbery, four counts of robbery, and two counts of kidnapping, all with firearm specifications. The trial court separately found appellant guilty of having a weapon while under disability ("WUD"). The trial court sentenced appellant to serve an aggregate term of 30 years.
 {¶ 4} Appellant filed a direct appeal of his conviction and sentence asserting that the evidence was insufficient to sustain the convictions, that the convictions were not supported by the manifest weight of the evidence, and that the trial court erred in imposing consecutive sentences contrary to R.C. 2929.14(E)(4) as well as arguing that the offenses were allied offenses of similar import and for that separate reason, consecutive sentences should not have been imposed. SeeBattle I, supra. On appeal, this court affirmed appellant's convictions, but remanded the matter for resentencing upon a finding that the trial court had failed to state its reasons on the record for imposing consecutive sentences pursuant to R.C. 2929.14(E)(4) and2929.19(B)(2)(c). Id. *Page 5 
 {¶ 5} A resentencing hearing was held on November 21, 2003, and the trial court imposed the same sentence. Appellant appealed his sentence again, and again this court remanded the matter for resentencing, finding that the trial court failed to make the necessary findings for the imposition of consecutive sentences. See State v. Battle, Franklin App. No. 03AP-1269, 2005-Ohio-707 ("Battle II"). The state of Ohio appealed to the Supreme Court of Ohio, which granted discretionary review. Pursuant to State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, certiorari denied (2006), 127 S.Ct. 442, this matter was remanded back to the trial court for resentencing under Fosters ruling. See In re OhioCriminal Sentencing Statutes Cases, 109 Ohio St.3d 313, 2006-Ohio-2109. A resentencing hearing was held on July 21, 2006. Both parties submitted sentencing memoranda and a presentence investigation report ("PSI") was prepared. The trial court again imposed the aggregate sentence of 30-years imprisonment.
 {¶ 6} On August 25, 2003, during which Battle I was pending on appeal, appellant filed a post-conviction petition pursuant to R.C. 2953.21
alleging ineffective assistance of counsel. Attached to his post-conviction petition were affidavits that included his own and that of Jason Tatum, John Leibold, Kristin Bryant, and Heather Hill. Jason Tatum asserted in his affidavit that on January 2, 2002, he was working at a barber shop when appellant came in alone at approximately 8:00 p.m. According to Mr. Tatum, appellant remained there until he received a phone call from an attorney at 9:00 p.m., whereupon appellant left immediately. John Leibold stated in his affidavit that he is an attorney licensed to practice law in Ohio, and that on January 2, 2002, appellant was employed by Mr. Leibold as his "personal care attendant." According to Mr. Leibold's affidavit, appellant arrived at Mr. Leibold's residence alone at approximately 9:00 p.m., *Page 6 
and left at approximately 10:30 p.m. Mr. Leibold stated that he was contacted by appellant's trial counsel about the possibility of being called as a witness in appellant's case, but was unable to recall the exact content of the conversation. Kristin Bryant stated in her affidavit that she was with appellant early in the afternoon on January 2, 2002, and that appellant called her from his residence at approximately 11:25 to 11:45 p.m. that night. Heather Hill asserted in her affidavit that appellant visited her place of employment on the night of January 2, 2002, from approximately 11:00 to 11:20 p.m. Ms. Hill also stated that she called appellant at his residence at approximately 12:05 a.m. and that they spoke for about 20 minutes.
 {¶ 7} After amending the post-conviction petition and briefing by both parties, the trial court dismissed the petition without a hearing. The trial court found that appellant failed to establish a cognizable claim for ineffective assistance of counsel.
 {¶ 8} Appellant now appeals and brings the following three assignments of error for our review:
 I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL FAILED TO INVESTIGATE, SUBPOENA AND CALL WITNESSES TO CHALLENGE THE STATE'S TIMELINE OF APPELLANT'S WHEREABOUTS ON THE EVENING OF THE ALLEGED OFFENSES.
 II. THE TRIAL COURT ERRED WHEN IT RULED TO DENY APPELLANT'S POST-CONVICTION PETITION WITHOUT AN EVIDENTIARY HEARING.
 III. THE TRIAL COURT ERRED WHEN IT DID NOT IMPOSE A SENTENCE CONSISTENT WITH SENTENCES IMPOSED FOR SIMILAR CRIMES COMMITTED BY SIMILAR OFFENDERS. *Page 7 
 {¶ 9} Because they are interrelated, appellant's first two assignments of error will be addressed together. Appellant's right to post-conviction relief arises from R.C. 2953.21(A)(1), which provides:
 Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
 {¶ 10} "A petition for postconviction relief is a statutory vehicle designed to correct the violation of a defendant's constitutional rights." State v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321, at ¶ 22. Though designed to address alleged constitutional violations, the post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. State v. Calhoun
(1999), 86 Ohio St.3d 279, 281; State v. Steffan (1994),70 Ohio St.3d 399, 400. It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. Id. at ¶ 23, citing State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. Appellant does not have a constitutional right of post-conviction review. Calhoun, at 281. Rather, post-conviction relief is a narrow remedy that affords appellant no rights beyond those granted by statute. Id. A post-conviction relief petition does not provide a petitioner a second opportunity to litigate his or her conviction. Hessler, supra. *Page 8 
 {¶ 11} A petitioner who seeks to challenge his conviction through a petition for post-conviction relief is not automatically entitled to a hearing. State v. Jackson (1980), 64 Ohio St.2d 107, 110. "Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for post-conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief."Calhoun, 291. We apply an abuse of discretion standard when reviewing a trial court's decision to deny a post-conviction petition without a hearing. State v. Campbell, Franklin App. No. 03AP-147, 2003 Ohio 6305, citing Calhoun, at 284. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 12} In a petition for post-conviction relief asserting ineffective assistance of counsel, "the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." Jackson, syllabus. "General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing." Id. at 111. See, also, State v.Pankey (1981), 68 Ohio St.2d 58 (holding appellant's broad conclusory statements, as a matter of law, do not meet the requirements for an evidentiary hearing under Jackson).
 {¶ 13} In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that *Page 9 
it was unreasonable under prevailing professional norms. Strickland v.Washington (1984), 466 U.S. 668, 687, 688, 104 S.Ct. 2052. The defendant must then establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693.
 {¶ 14} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action `might be considered sound trial strategy. "`Id. at 689, citingMichel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158. A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. State v. Hester
(1976), 45 Ohio St.2d 71, 75, 341 N.E.2d 304.
 {¶ 15} Appellant contends his trial counsel's failure to contact and/or call witnesses on his behalf constitutes ineffective assistance of counsel. According to appellant, the submitted affidavits, including his own, demonstrate that if called as defense witnesses, the cumulative testimony would have challenged, or even contradicted, the testimony of the state's main witness, McCague.
 {¶ 16} We note initially, however, that a counsel's decision regarding the calling of witnesses is within the purview of trial strategy, and the failure to subpoena witnesses for *Page 10 
trial does not violate counsel's duty to defendant absent a showing of prejudice. State v. Coulter (1992), 75 Ohio App.3d 219, 230; State v.Hunt (1984), 20 Ohio App.3d 310, 312. Also, while appellant's affidavit states that he told his counsel about these potential witnesses, we are cognizant that a petitioner's own self-serving affidavit alleging constitutional deprivation will not compel a hearing. State v.Young, Franklin App. No. 05AP-641, 2006-Ohio-1165, at ¶ 8, citingState v. Kapper (1983), 5 Ohio St.3d 36, 37-38. Further, even if credible, appellant's affidavit makes no mention of whether he informed his trial counsel far enough in advance so as to provide trial counsel with time to investigate the matters. Moreover, though stating they were not contacted by appellant's trial counsel, there is no evidence as to what steps counsel may have taken to attempt to contact Mr. Tatum, Ms. Bryant, or Ms. Hill, if he did in fact know of them. Appellant also states that he requested his counsel to contact Paula Wells, who McCague and his girlfriend lived with at the time of the robbery, but that his counsel failed to do so. Not only does the contention with respect to Ms. Wells suffer from the same flaws as the other witnesses, notably absent is an affidavit from Ms. Wells. Additionally, Mr. Leibold's affidavit states that he was contacted by appellant's trial counsel about being a defense witness, though he could not recall the specifics of their conversation. Thus, there is nothing to indicate that appellant's trial counsel did not investigate these matters, but instead, made a strategic decision not to call these witnesses.
 {¶ 17} Lastly, in light of the overwhelming evidence presented at trial, we find that even if these witnesses had testified, there is not a reasonable probability that the outcome of the proceedings would have been different. McCague testified at trial that he was high on Ecstasy the night of the robbery, and his testimony establishes that he was *Page 11 
"blur[ing] things together." However, it is undisputed that appellant and McCague were arrested minutes after the robbery across the street from the crime scene in appellant's car. Inside appellant's car, the police found two handguns, a bag containing items from the store, and a stocking cap. Mr. Reddy, one of the store clerks, identified McCague as the white male encountered outside the store that forced Mr. Reddy back inside the store. Although appellant was wearing a mask during the robbery, Mr. Reddy identified appellant by his clothes.
 {¶ 18} Appellant has not demonstrated how defense counsel's failure to call certain persons as witnesses at trial prejudiced appellant or deprived him of a substantial defense that would have resulted in a different outcome at trial. Nor has appellant overcome the strong presumption that defense counsel's failure to call certain persons as witnesses was sound trial strategy. Consequently, appellant has not established that his counsel's failure to call witnesses constituted the ineffective assistance of trial counsel. See State v. Coulverson, Franklin App. No. 01AP-893, 2002-Ohio-1324 (concluding counsel was not ineffective for failing to call witnesses where defendant was unable to demonstrate prejudice or deprivation of a substantial defense that would result in a different outcome); State v. Sandy (1982), 6 Ohio App.3d 37
(concluding counsel was not ineffective where the defendant was convicted on the testimony of one prosecution witness and defense counsel presented no witnesses, including the defendant); State v.Pannell (Dec. 26, 1989), Franklin App. No. 89AP-436 (holding counsel's failure to call the defendant as a witness on his own behalf is not unreasonable where defendant does not demonstrate why decision was unreasonable). *Page 12 
 {¶ 19} Upon our review of the record, we conclude that appellant failed to demonstrate that his trial counsel's decision not to call certain individuals as witnesses at trial was outside the wide range of professionally competent assistance. Moreover, even assuming arguendo that appellant's counsel was deficient in that regard, appellant failed to demonstrate that, but for counsel's decision not to present testimony of those individuals, there is a reasonable probability that the result of the proceeding would have been different. Thus, appellant's claim that he received ineffective assistance of counsel lacked merit. Accordingly, we overrule appellant's first and second assignments of error.
 {¶ 20} In his third assignment of error, appellant contends the trial court erred when it failed to impose a sentence consistent with sentences imposed for similar crimes committed by similar offenders in violation of R.C. 2929.11(B). Appellant's resentencing hearing was held on July 21, 2006, after the Supreme Court of Ohio's pronouncement ofFoster, supra. In Foster, the Supreme Court of Ohio held that under the United States Supreme Court's decisions in Apprendi v. New Jersey
(2000), 530 U.S. 466, 120 S.Ct. 2348, and Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, portions of Ohio's sentencing scheme were unconstitutional because they required judicial factfinding before a defendant could be sentenced to more than the minimum sentence, the maximum sentence, and/or consecutive sentences. Id. at paragraph one of the syllabus. As a remedy, the Supreme Court of Ohio severed the offending sections from Ohio's sentencing code. Id. at ¶ 90-102 (applying a severance remedy similar to that adopted in United States v.Booker (2005), 543 U.S. 220, 125 S.Ct. 738). As a result of theFoster court's application of the severance remedy, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or *Page 13 
give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus.
 {¶ 21} While Foster gives trial courts the freedom to impose a prison sentence within the statutory range without making findings or giving reasons for imposing maximum, consecutive, or more than minimum sentences, an appellate court will not disturb a trial court's sentencing decision absent clear and convincing evidence that either (1) the record does not support the sentence, or (2) the sentence is clearly contrary to law. State v. Webb, Franklin App. No. 06AP-147,2006-Ohio-4462, citing State v. Maxwell, Franklin App. No. 02AP-1271,2004-Ohio-5660; R.C. 2953.08(G)(2)(b). Further, even afterFosters severance, trial courts are still required to comply with R.C.2929.11 and 2929.12. State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, paragraph three of the syllabus.
 {¶ 22} R.C. 2929.11 provides, in part:
 (A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
 (B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders. *Page 14 
 {¶ 23} In support of his argument, appellant refers this court to 12 cases from the Franklin, Summit, Ashtabula, Cuyahoga, and Licking County Courts of Common Pleas concerning defendants convicted of aggravated robbery who received sentences of less duration than appellant. We do not view appellant's reference to these other cases as demonstrating that the trial court failed to comply with R.C. 2929.11(B). SeeState v. Aliane, Franklin App. No. 04AP-1259, 2006-Ohio-228 (finding a defendant's citation to two other "similar" cases failed to demonstrate the trial court's failure to comply with R.C. 2929.11(B)). See, also,State v. Johnson, Cuyahoga App. No. 80533, 2002-Ohio-5960 (finding that the defendant's citation "to a mere three cases he believes are similar is not sufficient to convince this court that the appellant's sentence was disproportionate"); State v. Georgakopoulos, Cuyahoga App. No. 81934, 2003-Ohio-4341 ("[s]imply pointing out an individual or series of cases with different results will not necessarily establish a record of inconsistency.").
 {¶ 24} Secondly, as explained in State v. King, Muskingum App. No. CT06-0020, 2006-Ohio-6566:
 Consistency, however, does not necessarily mean uniformity. Instead, consistency aims at similar sentences. Accordingly, consistency accepts divergence within a range of sentences and takes into consideration a trial court's discretion to weigh relevant statutory factors. The task of an appellate court is to examine the available data, not to determine if the trial court has imposed a sentence that is in lockstep with others, but to determine whether the sentence is so unusual as to be outside the mainstream of local judicial practice. Although offenses may be similar, distinguishing factors may justify dissimilar sentences.
Id. at ¶ 23, quoting State v. Ryan, Hamilton App. No. C-020283, 2003-Ohio-1188, at ¶ 10. *Page 15 
See, also, State v. Quine, Summit App. No. 20968, 2002-Ohio-6987 (finding that consistency requires only that a trial court weigh the same factors for each defendant); State v. Lathan, Lucas App. No. L-03-1188, 2004-Ohio-7074 (finding that each case is by its nature not the same); State v. Vlahopoloulos, Cuyahoga App. No. 80427, 2002-Ohio-3244 (declining to compare a particular defendant's sentence with similar crimes in its or other jurisdictions without an inference of gross disproportionately).
 {¶ 25} Moreover, the record clearly supports the imposed sentence. At the July 21, 2006 sentencing hearing, appellant's counsel directed the trial court to "painstaking research" to try to come up with similar cases where there were robberies with kidnapping charges to support the contention that a 30-year aggregate sentence was not warranted in this case. (July 21, 2006 Tr. at 4.) The trial judge, who also presided over appellant's criminal trial, as well as the two prior sentencing hearings, indicated on the record that he read appellant's presentence investigation report, which included a juvenile record, parole violations, and multiple aggravated robbery convictions, and even though not required to give reasons for the sentence, stated:
 [COURT] * * *I am not persuaded by defense counsel's argument that, well, these people weren't hurt as seriously as they could have been.
 First of all, I remember this case. I remember this case because it was unusual. This was an armed robbery of — I believe it was Dairy Mart.
 The defendant goes in. I don't remember exactly how many people were there, but he threatened to kill all of them at one time or another. He pistol — whipped them. Took them-kidnapped them. Took them in the back. Threatened to kill them because they couldn't open the safe. He not only — it wasn't only of the store but of the individual victims. There's no question the firearm was involved. *Page 16 
 We are talking about aggravated robbery here. Not talking about murder, although that's about the only way I could figure it could have been more serious. He did, in fact, pistol-whip the victims in this case.
 He still has a prior conviction, prior prison sentence for robbery.
 It is true that there was a mistake by the prosecutor. Therefore, I made the mistake of thinking he had two prior aggravated robberies or two prior robberies, when, in fact, he only had one.
 In my mind it doesn't change the fact that this was as serious of an armed robbery as we see.
Id. at 7, 8.[1]
 {¶ 26} Further, the trial court's sentencing entry reflects that it considered the purposes and principles of sentencing set forth in R.C.2929.11 and 2929.12.
 {¶ 27} Upon review of the record, we do not find that appellant has demonstrated by clear and convincing evidence that the imposed aggregate sentence of 30-years is contrary to law. Accordingly, we overrule appellant's third assignment of error.
 {¶ 28} For the foregoing reasons, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BRYANT and FRENCH, JJ., concur.
[1] While the trial court references confusion as to the number of prior aggravated robbery convictions of appellant, appellee asserts in its appellate brief that this was appellant's fifth aggravated robbery. *Page 1