OPINION
{¶ 1} Defendant-appellant, Patrick O'Keefe ("appellant"), appeals the judgments of the Franklin County Court of Common Pleas, which convicted appellant of second-degree felonious assault and third-degree robbery following appellant's guilty plea on these charges. Because the sentence imposed by the trial court was not contrary to law, we affirm those judgments. *Page 2 
 {¶ 2} On October 11, 2007, the Franklin County Grand Jury indicted appellant and three other individuals on one count of first-degree aggravated robbery, one count of first-degree robbery with specification, one count of robbery, three counts of second-degree felonious assault with specification, and one count of tampering with evidence. The indictment arose from events on October 3, 2007. From these same events, the grand jury issued a second indictment on April 21, 2008. In this second indictment, the grand jury indicted appellant and the same three individuals on one count of first-degree aggravated robbery with specification, second-degree robbery with specification, and one count of third-degree robbery. In the meantime, in November 2007, the grand jury had also indicted appellant on an unrelated fourth-degree theft offense.
 {¶ 3} Appellant and his three co-defendants all entered guilty pleas. Appellant pleaded guilty to one count of second-degree felonious assault and one count of third-degree robbery arising from the October 3, 2007 events. He also pleaded guilty to the fourth-degree theft offense. Plaintiff-appellee, state of Ohio ("the state"), requested dismissal of the remaining charges.
 {¶ 4} At the plea hearing, the prosecutor presented the following facts. In the early morning hours of October 3, 2007, Matthew Shaver, David Capaldi, Kathryn Rodgers, and Nicky Portman were leaving Jack's Corner Pub. Appellant, along with Christopher Viera, Alicia Marteney, and Brock Woodrick followed them. An altercation occurred between the two groups. Appellant and Woodrick struck Capaldi, Rodgers, and Shaver. The prosecutor referred to the "allegations" that appellant "had some brass knuckles as part of this altercation. He did strike both David Capaldi and also *Page 3 
Katie Ro[d]gers. As a result, Katie Ro[d]gers and David Capaldi were both rendered unconscious." (O'Keefe Plea Tr. 6.) Rodgers' purse and its contents were on the ground. Woodrick and Marteney picked up these items "and they, along with [appellant,] went later to a gas station where credit cards were used to fill up the gas tank of various cars," and those cars may have included a car belonging to appellant. (O'Keefe Plea Tr. 7.)
 {¶ 5} In response, appellant's counsel stated that the stolen credit cards were not used to fill up appellant's car. Otherwise, appellant's counsel did not object to the facts as presented by the prosecution.
 {¶ 6} The unrelated theft charge arose from the theft of a vehicle in February 2006. Appellant admitted to stealing the vehicle, and he had been cooperative with detectives.
 {¶ 7} The trial court held sentencing hearings for all the defendants on July 25, 2008. The witnesses and victims did not speak at each hearing, but the court told the parties that the testimony from all the hearings would be considered for purposes of sentencing each defendant. Counsel for all the defendants had the opportunity to participate in the hearings. The four sentencing hearings collectively provide the factual detail relevant to this appeal.
 {¶ 8} At the Christopher Viera sentencing, the court indicated that Viera had pleaded guilty on one count of third-degree robbery. In exchange for his plea, the state agreed to dismiss the other charges. Consistent with statements made at Viera's plea hearing, the prosecution and defense jointly recommended that the court consider a *Page 4 
sentence of community control. Viera's counsel stated that Viera had "cooperated with the state to every extent that he could." (Viera Sentencing Tr. 3.)
 {¶ 9} The prosecutor agreed that Viera had been cooperative and that the victims agreed "with working with this man." (Viera Sentencing Tr. 6.) The prosecutor also said that Columbus Police Detective Gary Bowman agreed that, while Viera engaged in the activity, "he is not the one who turned this ultra violent. He is not the one who engaged in the beating there at the scene." (Viera Sentencing Tr. 6.)
 {¶ 10} Noting that Viera had 248 days of jail credit, the trial court sentenced Viera to five years of community control on the third-degree robbery charge. The court also imposed court costs and ordered restitution in the amount of $2,500 to Rodgers. The court said that Viera "got a substantially reduced charge which dropped the repeat violent offender specification in exchange for the remorse that you showed in the aftermath of this tragic incident." (Viera Sentencing Tr. 8.)
 {¶ 11} At the Brock Woodrick sentencing hearing, Woodrick's counsel argued that Woodrick should receive the same sentence as Viera, i.e., community control. Counsel said that Woodrick had only three misdemeanors on his record, but admitted that Woodrick had had a positive drug screen and has a "drug issue." (Woodrick Sentencing Tr. 13.)
 {¶ 12} Woodrick addressed the court directly. He said that he was defending himself in the incident.
 {¶ 13} The prosecutor challenged any argument that the actions of Woodrick and Viera were similar. He said that Woodrick was the person who started the whole *Page 5 
incident. He also said that Woodrick's statements during the pre-sentence investigation attempted to minimize the incident and that Woodrick presented a danger.
 {¶ 14} One of the victims, Matthew Shaver, testified. He said that he owed about $6,700 in medical bills. He had injuries to his lip and a scratched cornea.
 {¶ 15} Shaver said that, on October 3, 2007, he was at Jack's Corner Pub with Capaldi, Rodgers, and Portman. As they were leaving, "[something happened." (Woodrick Sentencing Tr. 24.) He turned around and saw Capaldi getting hit. Before he knew what was going on, he "was getting hit. I didn't approach anyone." (Woodrick Sentencing Tr. 24.) It was Woodrick who first approached the group, and Woodrick hit Shaver.
 {¶ 16} A second victim, David Capaldi, also testified. He said that "calling it a bar fight, too, is not right. We were jumped. * * * It was just, you know, we were on the receiving end the whole time." (Woodrick Sentencing Tr. 31.) Woodrick punched Capaldi, who blacked out. Capaldi had a black eye, swollen jaw, and an injury requiring stitches to the back of his head. His outstanding medical bills totaled more than $5,000.
 {¶ 17} The third victim, Kathryn Rodgers, testified that she, Shaver, Capaldi, and Portman did nothing to provoke an attack. Marteney and appellant hit her. Rodgers' cheekbone was broken, and she had to have 13 stitches to her face. She also had to have reconstructive surgery. She experienced pain and depression and still suffers from anxiety. Her medical bills totaled about $30,000, although she received $7,000 in victims-of-crime compensation. *Page 6 
 {¶ 18} Rodgers told the court that Woodrick should get substantial prison time. When asked why she did not want Viera to receive substantial prison time, she said, "Because he cooperated with us." (Woodrick Sentencing Tr. 39.)
 {¶ 19} Rachel Ranney gave testimony, over objection, as a witness to the altercation. She was a bartender at a neighboring bar, where Shaver, Capaldi, Rodgers, and Portman had been before going to Jack's Corner Pub. As she drove her car away from her bar, she saw Capaldi lying in the road, with "a pool of blood behind him." (Woodrick Sentencing Tr. 49.) Shaver "was being attacked by the rest of the group at that point in time." (Woodrick Sentencing Tr. 49.)
 {¶ 20} Ranney pulled her car between where Capaldi lay and where the rest of the fight was occurring. Marteney and appellant approached her car and used graphic language. She called 911.
 {¶ 21} Ranney said that Marteney approached and then attacked Rodgers, so Rodgers "fought back." (Woodrick Sentencing Tr. 51.) As for Shaver, "[t]hey were attacking, punching, kicking [him] as he lay on the ground, until he was blacked-out." (Woodrick Sentencing Tr. 51.) Woodrick and Marteney "started to grab purses, wallets, cell phones. They grabbed wallets, whatever they could." (Woodrick Sentencing Tr. 52.)
 {¶ 22} Ranney said that appellant "grabbed [Rodgers] and pulled her away from [Marteney,] and he hit her so hard in the face that her body flew back horizontal and she landed on the cement. She was just knocked out. It's the worst I had ever seen." (Woodrick Sentencing Tr. 52.) *Page 7 
 {¶ 23} Ranney described the entire incident as "vicious, so violent[,] so mean." (Woodrick Sentencing Tr. 53.) When asked whether Viera "was beating Mr. Shaver, just like everybody else," Ranney said, "Not necessarily. He was involved in the attack, yes, but he wasn't nearly as violent as Brock Woodrick here or [appellant]." (Woodrick Sentencing Tr. 54-55.)
 {¶ 24} Columbus Police Detective Gary Bowman stated to the court that Viera had disclosed letters that Marteney and appellant sent, while in jail, to Viera. Bowman agreed that it was proper for the state to work with Viera "as a cooperating witness." (Woodrick Sentencing Tr. 58.)
 {¶ 25} The court sentenced Woodrick to seven years incarceration on the second-degree felonious assault charge. The court also ordered $5,000 in restitution to Rodgers and $700 to Shaver. The court imposed a concurrent one-year sentence on the third-degree robbery charge.
 {¶ 26} At the Alicia Marteney sentencing hearing, Marteney's counsel said that Marteney "did engage" Rodgers. (Marteney Sentencing Tr. 5.) Counsel also said, however, that "[i]f it were not for [appellant] hitting [Rodgers] with the brass knuckles and doing most of that damage, [Marteney] may be guilty of a simple assault." (Marteney Sentencing Tr. 5.) As for Rodgers' belongings, counsel said that Marteney only intended to pick up her own things, which had fallen on the ground. Marteney's counsel discussed Marteney's troubled upbringing and difficulties with alcohol, but also her current efforts to regain custody of her young son. *Page 8 
 {¶ 27} In response, the prosecutor confirmed that Marteney had attempted to cooperate with prosecutors. Based on her pre-sentence investigation report, the prosecutor said that "she's certainly in a different position than some of the other co-defendants of taking responsibility and showing genuine remorse." (Marteney Sentencing Tr. 9.)
 {¶ 28} The court sentenced Marteney to four years incarceration on the second-degree felonious assault charge and ordered restitution to Rodgers in the amount of $5,000. On the third-degree robbery charge, the court imposed a concurrent sentence of four years.
 {¶ 29} At appellant's sentencing hearing, the court indicated that, while appellant's counsel had been present for the other sentencing hearings, appellant had not. The court gave appellant's counsel the opportunity to re-call any of the victims or to challenge their statements.
 {¶ 30} Appellant's counsel told the court that appellant did not start the fight. "He saw a fight happening, and, unfortunately, he stepped in to protect his friends." (O'Keefe Sentencing Tr. 4.) Although appellant "was in possession of brass knuckles * * * they were not used during this incident." (O'Keefe Sentencing Tr. 4.) Counsel submitted a DNA report, which showed that there was blood on the brass knuckles, but it did not match Shaver, Capaldi or Rodgers. Appellant did not take Rodgers' purse or contents, and he did not fill his vehicle with gasoline with her credit cards. Appellant's counsel asked the court to impose the same punishment as that imposed on Viera, i.e., community control. *Page 9 
 {¶ 31} Appellant spoke directly to the court and expressed remorse for his behavior. He admitted to a serious drug problem.
 {¶ 32} The prosecutor challenged appellant's assertion that he only came to the aid of his friends. He also challenged appellant's assertion that he did not use brass knuckles in the incident. Appellant "is also the person that everyone agrees punched" Rodgers. (O'Keefe Sentencing Tr. 11.) Rodgers has a facial scar from the punch.
 {¶ 33} Rodgers spoke directly to the court and asked the court to impose "the maximum amount of prison time." (O'Keefe Sentencing Tr. 12.) She found it hard to believe that appellant had not used brass knuckles to hit her. Her cheekbone "was completely shattered and [she] had to have reconstructive surgery." (O'Keefe Sentencing Tr. 12.)
 {¶ 34} The court sentenced appellant to seven years incarceration on the second-degree felonious assault "given the serious injuries, particularly, to Ms. Ro[d]gers but also the other men." (O'Keefe Sentencing Tr. 14.) The court also ordered restitution in the amount of $5,000 for Capaldi's medical bills, noting that Capaldi had had eight to ten staples in the back of his head and had blacked out.
 {¶ 35} The court imposed a sentence of four years for the third-degree robbery charge. The court made this four-year sentence consecutive to the seven-year sentence on the assault charge.
 {¶ 36} Finally, the court imposed a 17-month sentence for the car theft. Consistent with the joint recommendation of the prosecutor and defense counsel, the *Page 10 
court imposed it as a concurrent sentence. In total, appellant received a sentence of 11 years incarceration.
 {¶ 37} Appellant appealed, and he raises the following assignments of error:
 [I.] THE TRIAL COURT'S SENTENCE CLEARLY AND CONVINCINGLY WAS CONTRARY TO LAW, BECAUSE THE COURT DID NOT SENTENCE [APPELLANT] CONSISTENTLY WITH SENTENCES THE COURT IMPOSED FOR SIMILAR CRIMES COMMITTED BY SIMILAR OFFENDERS, AS IS REQUIRED BY OHIO REVISED CODE § 2929.11(B).
 [II.] THE RECORD DOES NOT SUPPORT THE COURT'S SENTENCE AND THE SENTENCE IS CONTRARY TO THE LAW, AS THE COURT IMPOSED CONSECUTIVE SENTENCES UNDER OHIO REVISED CODE SECTION § 2929.14(E)(4), WHICH EXCEED THE MAXIMUM SENTENCE ALLOWABLE FOR THE MOST SERIOUS OFFENSE OF WHICH [APPELLANT] WAS CONVICTED UNDER OHIO REVISED CODE SECTION 2929.14(A).
 {¶ 38} We begin with appellant's first assignment of error, which asserts that appellant's sentence was contrary to law because his sentence was inconsistent with the sentences imposed on Viera and Woodrick. We disagree.
 {¶ 39} R.C. 2953.08(G) allows an appellate court to modify a sentence or remand for resentencing if the court "clearly and convincingly finds" that (1) the record does not support the sentence, or (2) "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b); State v.Burton, 10th Dist. No. 06AP-690, 2007-Ohio-1941, ¶ 19. In applying this standard, we will look to the record to determine whether the trial court considered and properly applied the appropriate statutory guidelines and whether the sentence is otherwise contrary to law. Id., quoting State v. Vickroy, 4th Dist. No. 06CA4, 2006-Ohio-5461, ¶ 15. *Page 11 
 {¶ 40} R.C. 2929.11(B) requires a felony sentence to be "consistent with sentences imposed for similar crimes committed by similar offenders." "`Consistency, however, does not necessarily mean uniformity. Instead, consistency aims at similar sentences. Accordingly, consistency accepts divergence within a range of sentences and takes into consideration a trial court's discretion to weigh relevant statutory factors. * * * Although offenses may be similar, distinguishing factors may justify dissimilar sentences.'" State v.Battle, 10th Dist. No. 06AP-863, 2007-Ohio-1845, ¶ 24, quoting State v.King, 5th Dist. No. CT06-0020, 2006-Ohio-6566, ¶ 23.
 {¶ 41} A trial court's proper application of the statutory sentencing guidelines, not a case-by-case comparison, ensures consistency in sentencing. State v. Hayes, 10th Dist. No. 08AP-233, 2009-Ohio-1100, ¶ 9. In order to demonstrate that a sentence is inconsistent, a defendant must show that the trial court did not properly consider the sentencing criteria prescribed by R.C. 2929.11 and 2929.12. Id. at ¶ 10, citing State v. Holloman, 10th Dist. No. 07AP-875, 2008-Ohio-2650, ¶ 19. A defendant's assertion that a co-defendant received a lesser sentence is not sufficient to meet this burden. Hayes, at ¶ 10.
 {¶ 42} Here, in its sentencing entries, the trial court stated that it had "considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12." The court also "weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14." And the court expressly found "that prison is consistent with the purposes and principles of sentencing." These statements *Page 12 
by the trial court satisfy the consistency requirement in R.C. 2929.11(B). Hayes, at ¶ 11, citing State v. Todd, 10th Dist. No. 06AP-1208, 2007-Ohio-4307, ¶ 16.
 {¶ 43} The record also supports the sentence. Although appellant asserts that Viera and Woodrick received lesser sentences for their actions on October 3, 2007, appellant's conduct was distinguishable.
 {¶ 44} As we detailed above, Viera received a sentence of only community control. The court sentenced him only on the robbery charge, however, because appellee had dropped the remaining charges. Appellee did so because Viera cooperated with prosecutors, and the victims agreed that community control was appropriate. The testimony also showed that Viera's actions were not as violent as those of other co-defendants, including appellant.
 {¶ 45} Woodrick received a sentence of seven years on the assault charge, the same as appellant received, but only a concurrent one-year sentence for the robbery charge. The court also ordered restitution in the amount of $5,700. We acknowledge that the testimony indicated that Woodrick started the incident, he struck Shaver and Capaldi, both were injured, and Capaldi had serious injuries.
 {¶ 46} Nevertheless, the testimony before the court established that appellant's actions were particularly violent, especially toward Rodgers. Ranney's description of appellant punching Rodgers in the face, with or without brass knuckles, was especially graphic. That single punch caused very serious injuries to Rodgers and resulted in physical, psychological, and financial harm. *Page 13 
 {¶ 47} In comparing his sentence to that of Woodrick, appellant focuses on the robbery charge, for which Woodrick received only a one-year concurrent sentence and appellant received a four-year consecutive sentence. The parties supplemented the record with the pre-sentence investigation report ("PSI"), which supports that separate four-year sentence. It discloses appellant's long criminal history, which includes numerous convictions for theft-related offenses, among many other charges and convictions. These theft-related convictions include unauthorized use of property, criminal mischief for attempting to steal a car, theft (two convictions), receiving stolen property (three convictions), and possession of criminal tools. In contrast, while our record does not include Woodrick's PSI, the sentencing hearing record indicates that Woodrick's criminal record included only misdemeanor offenses.
 {¶ 48} Finally, the PSI reveals that appellant was sentenced to community control in 2001 and again in 2006 following convictions for receiving stolen property. In both instances, appellant absconded. Given appellant's history, the trial court justifiably denied his request to be placed on community control yet again.
 {¶ 49} In the end, we conclude that the trial court gave very careful consideration to all the applicable statutory requirements, following four sentencing hearings in which all defendants were represented. Appellant does not contend that the sentences were outside the statutory range. We conclude that the sentences imposed on appellant were not contrary to law. Therefore, we overrule appellant's first assignment of error.
 {¶ 50} In his second assignment of error, appellant argues that the record does not support the court's imposition of consecutive sentences under R.C. 2929.14(E)(4) *Page 14 
because his sentence is inconsistent with the sentences imposed on his co-defendants and is contrary to law. Having already concluded that appellant's sentences are not contrary to law, we overrule appellant's second assignment of error.
 {¶ 51} In conclusion, we overrule appellant's first and second assignments of error. Accordingly, we affirm the judgments of the Franklin County Court of Common Pleas.
Judgments affirmed.
KLATT, J., concurs.
TYACK, J., concurs separately.