[Cite as *State v. Britton*, 2019-Ohio-1557.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                     Court of Appeals No. WD-18-020

        Appellee                              Trial Court No. 2015CR0458

v.

Curtis Britton, III                              **DECISION AND JUDGMENT**

        Appellant                             Decided:  April 26, 2019

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

W. Alex Smith, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1}  Appellant, Curtis Britton, III, appeals the judgment of the Wood County

Court of Common Pleas, following a jury trial, convicting him of one count of aggravated

possession of drugs, one count of possession of drugs, and one count of possessing

criminal tools, and sentencing him to serve a concurrent prison term of six years.  For the

reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} In the early morning of October 22, 2015, appellant was driving a red Jeep Cherokee southbound on Interstate 75 in Wood County, Ohio. With appellant in the Jeep were two other passengers, Layke Holmes and Quentrell Shelby. At approximately 3:30 a.m., Trooper Anthony Martin of the Ohio State Highway Patrol initiated a traffic stop of the Jeep after he recorded it speeding. During the course of the stop, Shelby was found to be clutching a baggie containing 138 oxycodone pills and 60 alprazolam pills. All three individuals were arrested.

{¶ 3} Thereafter, the Wood County Grand Jury entered a five-count indictment against appellant, charging him with one count of aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(c), a felony of the second degree, one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(d), a felony of the second degree, one count of possession of drugs in violation of R.C. 2925.11(A) and (C)(2)(b), a felony of the fourth degree, one count of trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(2)(c), a felony of the fourth degree, and one count of possessing criminal tools in violation of R.C. 2923.24, a felony of the fifth degree. The matter proceeded to a combined jury trial with appellant and Shelby as co-defendants.

{¶ 4} At the trial, the first witness to testify for the state was Layke Holmes. Holmes reached an agreement with the prosecution for potential intervention in lieu of conviction in exchange for her testimony against appellant and Shelby. Holmes testified that she met Shelby in the summer of 2015, and spoke with him at least twice a week, and saw him approximately every other weekend in the time leading up to the morning of the

2.

incident. On the day of October 21, 2015, Holmes testified that Shelby asked her to take a trip to Tennessee. He had previously asked her to take several out-of-town trips, which she declined, and which she assumed were for illegally-related purposes. However, Holmes agreed to go this time, and they left around midnight.

{¶ 5} Holmes testified that she was in and out of consciousness during the trip because she had taken some Xanax before they left. The first thing Holmes remembered was picking up appellant, whom she had never met before. She stated that appellant began driving the Jeep, and Shelby, who was drunk, moved to the back seat. Holmes next remembered Shelby asking her to hand him some plastic baggies, which she did. Holmes then went back to sleep and did not wake up until the traffic stop. During the stop, one of the officers asked her to wake up Shelby. When Shelby awoke and sat up, the plastic baggies filled with pills were on the seat where he had been laying.

{¶ 6} Holmes was later asked about statements she made to appellant while they were in the back of the patrol cruiser. Holmes acknowledged asking appellant why he did not give the drugs to her so that she could hide them. She stated that appellant responded by telling her to be quiet, and that he otherwise had his head down on the back of the front seat of the car.

{¶ 7} Finally, Holmes testified regarding bond. She testified that her bond was set at $25,000 with 10 percent, the same as appellant and Shelby. Holmes then stated that while she was unable to pay the bond amount, both appellant and Shelby had posted bond within 24 hours. Notably, appellant objected to this line of questioning, which the trial court overruled.

3.

{¶ 8} The state next called Trooper Martin. Martin testified that as he reached the vehicle following the traffic stop, he could detect a strong scent of deodorizer coming from the car. Martin testified that he observed Holmes awake in the front passenger seat and Shelby purportedly asleep across the back seat. Through his conversation with appellant and Holmes, Martin learned that they were travelling in a rental car from Detroit south towards Tennessee. Martin testified that appellant and Holmes seemed overly nervous, specifically noticing that their hands were trembling, their voices were shaky, and they were avoiding eye contact. As Martin reviewed the rental agreement, he noticed that the Jeep was rented by an individual who was not present, and none of the Jeep's occupants were listed as drivers on the rental agreement.

{¶ 9} At that point, Martin radioed Trooper Eric Stroud to request him to come to the scene and walk his K-9 around the Jeep. Martin then escorted appellant back to his patrol vehicle while Stroud conducted the walk-around. Ultimately, Stroud did not conduct a walk-around because as he was speaking with Holmes, he observed plastic baggies tied in knots in Shelby's hand. The baggies were found to contain 138 oxycodone pills and 60 alprazolam pills.

{¶ 10} While Stroud was discovering the pills, Martin was speaking with appellant. Audio from the traffic stop, which was being played for the jury, revealed that appellant mentioned to Martin that he was on parole. Appellant objected to this evidence and to Martin's testimony concerning the same, on the basis that it was not what was actually said by Martin. The trial court overruled the objection. The following exchange then occurred between Martin and the prosecutor:

4.

Q: And, Officer, I believe the last question I posed was given Mr. Britton's statement to you that he was on parole, is that a potential criminal indicator for you?

A: Yes. It indicated to me that he had been involved in criminal activity before. In itself, it doesn't mean he's involved in criminal activity now. It just means that he knows people that are involved because he was involved. It could mean that he was still involved in criminal activity.

Q: Okay. And just because he may have been involved in criminal activity once upon a time doesn't mean he was involved in criminal activity that day, correct?

A: Correct, it does not mean that, no.

{¶ 11} After this exchange, appellant moved for a mistrial, arguing that the prosecutor brought up the fact that appellant has a prior criminal history. The trial court denied the motion.

{¶ 12} Following the state's presentation of evidence, Shelby took the stand in his own defense. Shelby testified that on October 21, 2015, he was at a friend's house drinking and playing video games. Shelby then asked his friend, Diante, if he could borrow the Jeep to go pick up some cigarettes. Notably, Diante was not the person listed on the rental agreement for the Jeep. Diante agreed, but asked Shelby if he would also pick up Holmes. Shelby testified that he had never met Holmes before that night. Shelby described that after he picked up Holmes, he received a call from appellant, which led to

5.

Shelby asking Diante if he could drive the Jeep down to Tennessee and back. Shelby testified that when he picked up appellant, appellant did not say anything about drugs or drug trafficking. He further testified that Holmes asked if she could come with them on the trip, to which Shelby and appellant assented. According to Shelby, he then fell asleep in the back seat after about 30 minutes of driving, and did not wake up until the traffic stop. Shelby asserted that he had never before seen the pills that were underneath him, and that he has never trafficked drugs.

{¶ 13} Ultimately, the jury returned with a verdict as to both defendants of guilty upon all counts. The trial court then continued the matter for preparation of a presentence investigation report. At appellant's sentencing, the trial court found that counts one and two merged, and that counts three and four merged. The court then ordered appellant to serve six years in prison on count two, 18 months in prison on count four, and 12 months in prison on count five. The court ordered all of the prison sentences to be served concurrently for a total prison term of six years.

## II. Assignments of Error

{¶ 14} Appellant has timely appealed his judgment of conviction, and now asserts three assignments of error for our review:

  1. The Trial Court erred when it denied the Defendant's motion for mistrial.

  2. The Trial Court erred by failing to sustain an objection to prejudicial evidence under Ohio Rules of Evidence 403(A).

6.

3. The Trial Court erred by not considering all of the sentencing factors under R.C. 2929.11.

### III. Analysis

**{¶ 15}** In his first assignment of error, appellant argues that the trial court erred when it did not declare a mistrial after the state elicited testimony regarding appellant's status on parole.

**{¶ 16}** "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Davis*, 6th Dist. Ottawa No. OT-09-032, 2010-Ohio-4383, ¶ 71, citing *State v. Franklin*, 62 Ohio St.3d 118, 127-128, 580 N.E.2d 1 (1991). "The grant or denial of a mistrial rests within the discretion of the trial court and is subject to review on appeal under an abuse of discretion standard." *Id.*, citing *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). An abuse of discretion connotes that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 17}** Appellant argues that the testimony regarding his parole status violates Evid.R. 609(A), which provides,

> **General Rule.** For the purpose of attacking the credibility of a witness:
>
> * * *
>
> (2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the

7.

crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶ 18} We disagree for two reasons. First, Evid.R. 609(A)(2) is not applicable in this case since appellant was not a witness in the trial. Second, Evid.R. 609(A)(2) does not prohibit testimony, but allows it. Thus, the admission of testimony cannot violate Evid.R. 609(A).

{¶ 19} Nevertheless, we note that the testimony regarding appellant's parole status may have been inadmissible under Evid.R. 404(B), which states that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," or Evid.R. 403(A), which states that "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 20} Assuming for purposes of our analysis that the testimony was in fact inadmissible, we nevertheless find that the trial court's decision to deny appellant's motion for a mistrial was not unreasonable, arbitrary, or unconscionable. First, no objection was made that the evidence of parole was inadmissible as prior bad acts evidence or that it was unduly prejudicial. Thus, while we think a limiting instruction would still have been prudent, the trial court had no sustained objection before it to correct. Second, the underlying crime for which appellant was serving parole was never

8.

mentioned, which prevented a direct correlation between appellant's prior criminal activity and his current conduct. Third, the prejudice from the testimony was ameliorated when it was followed by Martin's agreement that "just because he may have been involved in criminal activity once upon a time doesn't mean he was involved in criminal activity that day." Therefore, we hold that the trial court did not abuse its discretion when it denied appellant's motion for a mistrial.

**{¶ 21}** Accordingly, appellant's first assignment of error is not well-taken.

**{¶ 22}** In his second assignment of error, appellant argues that the trial court erred when it allowed testimony that Holmes was unable to post bond while appellant was out of jail within 24 hours. Appellant argues that the testimony was irrelevant, and was only introduced to invite the jury to infer that appellant posted bond with drug money.

**{¶ 23}** "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 43.

**{¶ 24}** Here, although we agree with appellant that the testimony regarding the relative abilities of the defendants to post bond was irrelevant, we find that appellant was not materially prejudiced by the introduction of such testimony. Holmes testified that despite working two jobs, she was unable to post bond. However, there was no suggestion regarding the source of the funds appellant used to post bond, and specifically no suggestion that appellant used drug money to post bond. The testimony was simply

9.

that appellant posted bond and Holmes did not.  Furthermore, unlike Shelby, there was also no testimony that appellant was unemployed, which could have allowed the jury to infer that he obtained the funds through nefarious means.  But even then, Shelby testified that his mother and girlfriend posted his bond, and there was testimony that Shelby's mother was a nurse and his girlfriend owned a business and was also a caregiver, implying that they would have the funds to post his bond.  Therefore, we find that Holmes's testimony created no real inference that appellant used drug money to post his bond, and thus the trial court did not abuse its discretion in denying appellant's objection.

{¶ 25} Accordingly, appellant's second assignment of error is not well-taken.

{¶ 26} Finally, in his third assignment of error, appellant argues that the trial court erred by not considering all of the factors under R.C. 2929.11, in particular the factor requiring a sentence consistent with those "imposed for similar crimes committed by similar offenders."  R.C. 2929.11(B).  Appellant argues that his six-year prison sentence was inconsistent with the four-year prison sentence imposed upon Shelby.

{¶ 27} We review felony sentences under the approach set forth in R.C. 2953.08(G)(2).  *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 11.  R.C. 2953.08(G)(2) provides that an appellate court "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * * if it clearly and convincingly finds:  * * * (b) That the sentence is otherwise contrary to law."

{¶ 28} Here, we find that appellant's sentence is not clearly and convincingly contrary to law.  In *State v. Dahms*, 6th Dist. Sandusky No. S-11-028, 2012-Ohio-3181, ¶

21-22, we addressed the consistency and proportionality requirements under R.C. 2929.11(B):

The consistency and proportionality requirements of R.C. 2929.11(B) require that sentencing courts impose punishment and sentence "consistent with the sentences imposed for similar crimes committed by similar offenders." Consistency does not necessarily mean uniformity; rather, consistency has a goal of similar sentences for similar offenses. *See State v. Battle*, 10th Dist. Franklin No. 06AP-863, 2007-Ohio-1845. As a result, consistency includes a range of sentences, taking into consideration a trial court's discretion to weigh the relevant statutory factors. *Id.* Even though offenses may be similar, "distinguishing factors may justify dissimilar sentences." *Id.* at ¶ 24; *State v. King*, 5th Dist. Muskingum No. CT06-0020, 2006-Ohio-6566, ¶ 23.

In addition, consistency in sentencing does not result from a case-by-case comparison, but by the trial court's proper application of the statutory sentencing guidelines. *State v. Hall*, 179 Ohio App.3d 727, 2008-Ohio-6228, 903 N.E.2d 676, ¶ 10 (10th Dist.). An offender cannot simply present other cases in which an individual convicted of the same offense received a lesser sentence to demonstrate that his sentence is disproportionate. *State v. Hayes*, 10th Dist. Franklin No. 08AP-233, 2009-Ohio-1100, ¶ 10, citing *State v. Battle*, 10th Dist. Franklin No. 06AP-863, 2007-Ohio-1845, ¶ 23. Rather, to demonstrate that a sentence is

11.

inconsistent, an offender must show that the trial court did not properly consider applicable sentencing criteria found in R.C. 2929.11 and 2929.12. *State v. Holloman*, 10th Dist. Franklin No. 07AP-875, 2008-Ohio-2650, ¶ 19.

{¶ 29} In this case, the trial court, at the sentencing hearing and in its sentencing entry, stated that it considered the provisions in R.C. 2929.11. Despite this, appellant assumes that the two year difference between his sentence and Shelby's is "random and not based in the factors." However, appellant does not address the fact that he and Shelby may have different backgrounds and criminal histories, or the fact that appellant twice failed to appear for sentencing, which is an appropriate factor to consider when evaluating recidivism. *See State v. Williams*, 7th Dist. Mahoning No. 11 MA 131, 2012-Ohio-6277, ¶ 69. Therefore, we hold that because the record establishes that the trial court considered the relevant sentencing factors under R.C. 2929.11 and 2929.12, appellant's sentence is not clearly and convincingly contrary to law.

{¶ 30} Accordingly, appellant's third assignment of error is not well-taken.

## IV. Conclusion

{¶ 31} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.     _____
                 JUDGE

Arlene Singer, J.

                _____
Thomas J. Osowik, J.          JUDGE
CONCUR.

                _____
                 JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.