[Cite as *State v. Williamson*, 2024-Ohio-1599.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 22AP-135<br>(C.P.C. No. 19CR-5678) |
| v. | : | and |
| Brandon L. Williamson, | : | No. 22AP-136<br>(C.P.C. No. 19CR-5970) |
| Defendant-Appellant. | : | |
| | : | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on April 25, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Darren M. Burgess*, for appellee.

**On brief:** C*ampbell Law, LLC,* and *April F. Campbell*, for appellant.

APPEALS from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} This is a consolidated appeal from the judgments of conviction entered by the Franklin County Court of Common Pleas against defendant-appellant, Brandon L. Williamson, after he pled guilty to two second-degree felony trafficking in cocaine offenses and was sentenced to an aggregate indefinite prison term of 7 to 10.5 years. For the following reasons, we affirm the judgments below in all respects except as to the imposed mandatory minimum fine of $15,000 ($7,500 for each offense). In that regard, we reverse and remand to the trial court for a determination as to whether Mr. Williamson should be granted relief from the imposition of any mandatory fines, pursuant to R.C. 2929.18(B)(1), because of his present and future inability to pay them.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On November 1, 2019, a Franklin County Grand Jury returned a two-count indictment charging Mr. Williamson (case No. 19CR-5678) and his codefendant, Jeremy A. Heglar, (case No. 19CR-5677) with trafficking in cocaine (Count 1) and cocaine possession (Count 2).  Both counts were charged as first-degree felony offenses with money forfeiture specifications and pertained to contraband seized at Mr. Williamson's apartment in October 2019 while Mr. Heglar was present.

{¶ 3}  Two weeks later, Mr. Williamson was separately indicted in case No. 19CR-5970 in connection with drugs, firearms, and cash seized from his car and hotel room by police on August 14, 2019.  In that case, he was charged with another first-degree felony cocaine trafficking offense (Count 1), another first-degree felony cocaine possession offense (Count 2), and two fifth-degree felony drug possession offenses (Counts 3 and 4).  All four counts included money forfeiture and one-year firearm specifications.

{¶ 4}  On November 29, 2021, Mr. Williamson entered a counseled guilty plea to the stipulated lesser-included offense of Count 1 in case No. 19CR-5678, trafficking in cocaine (equal to or exceeding 20 grams but less than 27 grams[1]) in violation of R.C. 2925.03(A) and (C)(4)(e), a felony of the second degree, and the money forfeiture specification ($7,536).  (*See* Nov. 29, 2021 Plea Tr. at 13, 15.)  Mr. Williamson also pled guilty to the same stipulated lesser-included offense of Count 1 in case No. 19CR-5970, trafficking in cocaine as a second-degree felony, with the money forfeiture specification ($2,580) but without the firearm specification.  (*See* Plea Tr. at 4, 13-15.)  Upon recommendation of the prosecutor, the trial court entered a nolle prosequi as to Count 2 in case No. 19CR-5678 and the remaining counts and firearm specifications in case No. 19CR-5970.  (*See* Plea Tr. at 4, 16.)  On the agreement of the parties, the trial court ordered Mr. Williamson to undergo a presentence investigation.  (Plea Tr. at 3-4, 10, 16.)

{¶ 5}  At the February 9, 2022 sentencing hearing, the trial court imposed an indefinite prison sentence of 4 to 6 years in case No. 19CR-5678 and an indefinite prison

---

[1] At the plea hearing, the prosecutor indicated the parties were stipulating the amount of cocaine seized in both cases was "found to be [between] 20 to ***27 grams***." (Emphasis added.) (Nov. 29, 2021 Plea Tr. at 13-14.) Trafficking in cocaine is a first-degree felony offense, however, if the amount of cocaine involved "***equals or exceeds [27] grams*** but is less than [100] grams." (Emphasis added.) R.C. 2925.03(C)(4)(f). Mr. Williamson entered a plea of guilty to the amended charge of second-degree felony trafficking in cocaine under R.C. 2925.03(A) and (C)(4)(e). We only point out this discrepancy to reconcile the record with the statute.

sentence of 3.5 to 4.5 years in case No. 19CR-5970. The trial court then ordered the sentences to run consecutively, for a total aggregate indefinite prison sentence of 7 to 10.5 years. It also imposed a mandatory fine in the amount of $7,500 in each case—$15,000 in total—as required by R.C. 2929.18(A)(3)(b) and (B)(1). The trial court memorialized Mr. Williamson's convictions and sentence in judgment entries issued February 9, 2022.

{¶ 6} Mr. Williamson timely appealed from the judgments of conviction and raises the following three assignments of error for our review:

> [I.] [MR.] WILLIAMSON'S SENTENCES SHOULD BE REVERSED, BECAUSE TRIAL COUNSEL WAS INEFFECTIVE FOR THREE REASONS:
>
>> A. HE FAILED TO FILE A WAIVER OF [MR.] WILLIAMSON'S MANDATORY FINES AND FAILED TO ARGUE IN MOTION AS TO HIS INDIGENCE, LIKE THE TRIAL COURT REQUESTED.
>>
>> B. HE FAILED TO OFFER THE CO-DEFENDANT'S MUCH LIGHTER SENTENCE IN MITIGATION AT SENTENCING, DESPITE HIM COMMITTING THE EXACT SAME OFFENSE.
>>
>> C. HE FAILED TO OBJECT TO [MR.] WILLIAMSON'S INDETERMINATE SENTENCES AS UNCONSTITUTIONAL.
>
> [II.] [MR.] WILLIAMSON'S SENTENCES SHOULD BE REVERSED, BECAUSE IT WAS GROSSLY DISPROPORTIONATE TO HIS CO-DEFENDANT'S [SENTENCE] WHO COMMITTED THE EXACT SAME OFFENSE.
>
> [III.] [MR.] WILLIAMSON'S SENTENCES UNDER THE REAGAN TOKES ACT ARE UNCONSTITUTIONAL. THUS, HIS SENTENCES SHOULD BE REVERSED.

## II. ANALYSIS

{¶ 7} Mr. Williamson's first assignment of error raises three claims of ineffective assistance of trial counsel. Because two of those claims pertain to the same matters at issue in Mr. Williamson's second and third assignments, we address his three assignments of error in reverse order.

### A. Third Assignment of Error

**{¶ 8}** In his third assignment of error, Mr. Williamson argues the trial court erred in imposing an indefinite sentence under 2018 Am.Sub.S.B. No. 201 (the "Reagan Tokes Law") because that law is unconstitutional. Mr. Williamson did not object to the application or constitutionality of the Reagan Tokes Law at trial and, thus, has waived all but plain error. *State v. Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, ¶ 7, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 16 (recognizing an appellate court has discretion to consider a forfeited constitutional challenge to a statute in a criminal case and may review the trial court's decision for plain error).

**{¶ 9}** To demonstrate plain error under Crim.R. 52(B), a defendant "must show that an error occurred, that the error was plain, and that the error affected his substantial rights." *State v. Bond*, 170 Ohio St.3d 316, 2022-Ohio-4150, ¶ 17, citing *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 52. *See also Buttery* at ¶ 7. The Supreme Court of Ohio has " 'interpreted [the third] aspect of the rule to mean that the trial court's error must have affected the outcome of the trial,' " *Bond* at ¶ 17, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), such that "reversal [is] necessary to correct a manifest miscarriage of justice," *see Buttery* at ¶ 7, citing *Quarterman* at ¶ 16.

**{¶ 10}** Effective March 22, 2019, the Reagan Tokes Law requires a sentencing court to impose an indefinite sentence consisting of a minimum and a maximum prison term on individuals convicted of first- or second-degree felonies for which life imprisonment is not an available sentence. *State v. Hacker*, ___ Ohio St.3d ___, 2023-Ohio-2535, ¶ 7, citing R.C. 2929.14(A)(1)(a) and (2)(a). R.C. 2967.271 specifies how the minimum and maximum prison terms affect the amount of time a defendant sentenced under the Reagan Tokes Law will be incarcerated. *See Hacker* at ¶ 8. Generally, there is a rebuttable presumption that a defendant will be released from prison after serving the minimum term imposed by the sentencing court. *See* R.C. 2967.271(B). But the Ohio Department of Rehabilitation and Correction ("ODRC") "may rebut [that] presumption" if it—being the ODRC—"determines, at a hearing" that one of the conditions specified in R.C. 2967.271(C) apply. In that event, the ODRC "may maintain the offender's incarceration" up to the maximum prison term set by the sentencing court. R.C. 2967.271(D)(1). *See Hacker* at ¶ 10.

**{¶ 11}** In this case, Mr. Williamson was sentenced for two counts of trafficking in cocaine, both felonies of the second degree. *See* R.C. 2925.03(A) and (C)(4)(e). Life imprisonment is not an available sentence for a second-degree felony trafficking offense. *See* R.C. 2925.03(C)(4)(e); R.C. 2929.14(A)(2)(a). Because both of Mr. Williamson's trafficking offenses were committed on or after March 22, 2019—when the Reagan Tokes Law took effect—the trial court was statutorily required to impose a mandatory "indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to" R.C. 2929.144 for each offense. *See* R.C. 2929.14(A)(2)(a). *See also Hacker* at ¶ 7.

**{¶ 12}** In accordance with that law, the trial court sentenced Mr. Williamson to an indefinite prison sentence of 4 to 6 years in case No. 19CR-5678 and an indefinite prison sentence of 3 to 4.5 years in case No. 19CR-5970. On appeal, Mr. Williamson argues the trial court erred in applying the indefinite sentencing structure of the Reagan Tokes Law because the law is unconstitutional. More specifically, he contends the presumptive release portion of R.C. 2967.271 violates his constitutional rights to due process, a jury trial, and counsel, as well as the constitutional requirement of separation of powers.

**{¶ 13}** While this appeal was pending, however, the Ohio Supreme Court issued a decision finding the Reagan Tokes Law to be facially constitutional. *Hacker* at ¶ 41. Pursuant to that decision, we reject Mr. Williamson's constitutional challenge to the indefinite sentencing structure and presumptive release portion of the Reagan Tokes Law and find that the trial court did not err in imposing the indefinite sentences that law requires. *See, e.g., State v. Harris*, 10th Dist. No. 21AP-678, 2023-Ohio-3994, ¶ 118; *State v. Burks*, 10th Dist. No. 21AP-657, 2024-Ohio-17, ¶ 55; *State v. Abdullahi*, 10th Dist. No. 21AP-350, 2024-Ohio-418, ¶ 54.

**{¶ 14}** For these reasons, Mr. Williamson's third assignment of error is overruled.

### B. Second Assignment of Error

**{¶ 15}** In his second assignment of error, Mr. Williamson argues the prison sentence imposed in case No. 19CR-5678 should be reversed because it is "grossly disproportionate"

to the sentence his codefendant, Mr. Heglar, received in case No. 19CR-5677.[2] (Brief of Appellant at 14-17.)

**{¶ 16}** R.C. 2953.08(G)(2) generally governs our review of felony sentences. *See, e.g.*, *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 26-42. Under that statute, we are permitted to modify or vacate a sentence only if we clearly and convincingly find either: (1) the record does not support the sentencing court's findings under certain statutes, none of which are implicated here; or (2) the sentence is otherwise contrary to law. *Id*. at ¶ 30-39; R.C. 2953.08(G)(2).

**{¶ 17}** Relevant here, a sentence is contrary to law if the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *See, e.g.*, *State v. Dodson*, 10th Dist. No. 20AP-297, 2021-Ohio-2415, ¶ 11, quoting *State v. Haddad*, 10th Dist. No. 16AP-459, 2017-Ohio-1290, ¶ 19. However, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones* at ¶ 42.

**{¶ 18}** Central to Mr. Williamson's second assignment of error is his general dissatisfaction with receiving a longer prison sentence than his codefendant. Specifically, he takes issue with the trial court's application of R.C. 2929.11(B), which states:

> A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in [R.C. 2929.11(A)], commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and ***consistent with sentences imposed for similar crimes committed by similar offenders***.

(Emphasis added.)

**{¶ 19}** Initially, we note that although Mr. Williamson contends that his sentence is "disproportionate" to his codefendant's, his argument is, in reality, one of consistency. "For

---

[2] Although Mr. Williamson's argument in support of his second assignment of error repeatedly refers to "sentences" in the plural, he does not actually make any substantive arguments regarding the prison sentence imposed in case No. 19CR-5970—which had no connection to his codefendant's charges or sentence in case No. 19CR-5677—under this assignment of error. (*See* Brief of Appellant at 14-17.) Accordingly, we limit our analysis of his second assignment of error to the sentence he received in case No. 19CR-5678.

purposes of R.C. 2929.11(B), 'consistency' relates to the sentences in the context of sentences given to other offenders; 'proportionality' relates solely to the punishment in the context of the offender's conduct (does the punishment fit the crime)." *State v. Moore*, 8th Dist. No. 99788, 2014-Ohio-5135, ¶ 17. *See also State v. Murphy*, 10th Dist. No. 12AP-952, 2013-Ohio-5599, ¶ 13.

{¶ 20} Both Mr. Williamson and Mr. Heglar were charged with the same offenses and specifications by a single indictment in connection with the drugs and money seized from Mr. Williamson's apartment on October 24, 2019 while Mr. Heglar was present. But, ultimately, the two men received two very different sentences. Mr. Williamson pled guilty to second-degree felony drug trafficking and was sentenced to an indefinite prison term of four to six years in that case. In contrast, Mr. Heglar pled guilty to third-degree felony drug trafficking and was sentenced to community control for a period of five years.

{¶ 21} On appeal, Mr. Williamson acknowledges his trial counsel did not present evidence regarding his Mr. Heglar's community control sentence at his sentencing hearing. Nonetheless, Mr. Williamson's attributes error to the trial court's purported failure to consider it. (*See* Brief of Appellant at 15-17.) Because Mr. Williamson did not raise this issue in the trial court, he has waived all but plain error and his claim of ineffective assistance of counsel, as discussed *infra*. *See, e.g.*, *State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, ¶ 2.

{¶ 22} Consistency in sentencing is accomplished by the trial court's consideration and application of the controlling statutory sentencing factors and guidelines in the Ohio Revised Code. *See, e.g.*, *Murphy* at ¶ 13, quoting *State v. McMichael*, 10th Dist. No. 11AP-1042, 2012-Ohio-3166, ¶ 42, citing *State v. Hayes*, 10th Dist. No. 08AP-233, 2009-Ohio-1100, ¶ 9; *State v. Holloman*, 10th Dist. No. 07AP-875, 2008-Ohio-2650, ¶ 19. There is no requirement that codefendants receive equal sentences. *State v. Hall*, 179 Ohio App.3d 727, 2008-Ohio-6228, ¶ 10 (10th Dist.), citing *State v. Templeton*, 5th Dist. No. 2006-CA-33, 2007-Ohio-1148, ¶ 103. Rather, "consistency has a goal of similar sentences for similar offenses." *Murphy* at ¶ 14, citing *State v. Battle*, 10th Dist. No. 06AP-863, 2007-Ohio-1845. "As a result, consistency includes a range of sentences, taking into consideration a trial court's discretion to weigh the relevant statutory factors." *Id.* Thus, even where offenses are similar, "distinguishing factors may justify dissimilar sentences." *Id.*, citing *Battle* at

¶ 24. "A consistent sentence is not derived from a case-by-case comparison; rather, the trial court's proper application of the statutory sentencing guidelines ensures consistency." *Hall* at ¶ 10, citing *State v. Swiderski*, 11th Dist. No. 2004-L-112, 2005-Ohio-6705, ¶ 58.

{¶ 23} Mr. Williamson does not claim on appeal, however, that the trial court failed to properly consider the statutory purposes and factors of felony sentencing in imposing his sentence. Nor does Mr. Williamson contend that his sentence exceeded the statutorily permissible range for a second-degree felony offense. And because both Mr. Williamson and Mr. Heglar entered guilty pleas to resolve their respective cases, there is no basis to suggest the relative severity of Mr. Williamson's sentence was indicative of an unconstitutional trial tax. *E.g.*, *State v. Simpson*, 164 Ohio St.3d 102, 2020-Ohio-6719, ¶ 25-26 (O'Connor, C.J., concurring).

{¶ 24} Thus, Mr. Williamson does not directly challenge the propriety of his sentence in his second assignment of error. Instead, he attributes error to the trial court's purported failure to consider Mr. Heglar's community control sentence when it imposed a prison sentence upon Mr. Williamson. More precisely, Mr. Williamson takes issue with the absence of "any indication on this record that the trial court properly considered whether the 'substantially similar offenders'—here the exact same offense—'received grossly disproportionate sentences' to [Mr.] Williamson's." (Brief of Appellant at 16-17, quoting *State v. Coburn*, 4th Dist. No. 03CA774, 2004-Ohio-2997, ¶ 17.) His contention lacks merit in its entirety.

{¶ 25} It is well-established that a trial court has "full discretion to impose a prison sentence within the applicable sentencing range." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 100. And "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *Jones*, 2020-Ohio-6729 at ¶ 20, citing *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 31, and *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). Based on our review of the transcript from the sentencing hearing and the trial court's sentencing entry, we find the trial court clearly considered and applied the R.C. 2929.11 and 2929.12 sentencing factors in determining what sentence was appropriate under the unique circumstances of Mr. Williamson's case. (*See* Feb. 9, 2022 Sentencing Tr. at 8-13.) The trial court was not required to make any specific findings on the record as to

its application of the "consistency" requirement in R.C. 2929.11(B) or any of the sentencing factors.

{¶ 26} Contrary to Mr. Williamson's position, we emphasize that it was Ohio's sentencing laws—not the charging indictment—that destined Mr. Williamson to receive a more severe prison sentence than Mr. Heglar. By entering a guilty plea to a second-degree felony trafficking in a cocaine offense, Mr. Williamson was subject to ***mandatory*** prison time and the indefinite sentencing structure of the Reagan Tokes Law. *See* R.C. 2929.14(A)(2)(a). On the other hand, Mr. Heglar was not. This is because Mr. Heglar's third-degree felony offense of trafficking in cocaine only carries "a ***presumption*** for a prison term for the offense" unless other statutorily prescribed conditions apply. (Emphasis added.) R.C. 2925.03(C)(4)(d). *See also* R.C. 2929.13(E)(1).

{¶ 27} Moreover, even had the trial court sentenced Mr. Heglar to a prison term, the trial court could have imposed only "a definite term of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months." R.C. 2929.14(A)(3)(b). In stark contrast, Mr. Williamson's second-degree felony conviction ***required*** the trial court to impose upon Mr. Williamson a mandatory prison sentence that included "an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years." *See* R.C. 2929.14(A)(2)(a). And, on that point, we note the trial court sentenced Mr. Williamson to a minimum prison term of just four years in case No. 19CR-5678—just one year greater than the maximum prison sentence allowed for a third-degree felony offense.

{¶ 28} To the extent Mr. Williamson now takes issue with the disparity between the plea offers he and Mr. Heglar received or otherwise believes his trial counsel was ineffective in plea negotiations, neither have been raised as error in this appeal.

{¶ 29} For these reasons, we conclude the trial court did not err—plainly or otherwise—when it sentenced Mr. Williamson to a longer prison term than Mr. Heglar. Accordingly, Mr. Williamson's second assignment of error is overruled.

## C. First Assignment of Error

{¶ 30} In his first assignment of error, Mr. Williamson argues he received ineffective assistance of trial counsel.

### 1. Legal Standards

**{¶ 31}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or objectively unreasonable, as determined by " 'prevailing professional norms;' " and (2) that the deficient performance of counsel prejudiced the defendant. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 77, quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

**{¶ 32}** To show trial counsel's performance was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. "As a result, trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance." *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998), citing *State v. Thompson*, 33 Ohio St.3d 1, 10 (1987). Tactical or strategic decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989).

**{¶ 33}** Prejudice results when " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bradley* at 142, quoting *Strickland* at 694. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland* at 694.

**{¶ 34}** When analyzing an ineffective assistance of counsel claim, an appellate court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland* at 697. *See also State v. Wade*, 10th Dist. No. 20AP-456, 2021-Ohio-4090, ¶ 19.

### 2. Analysis

**{¶ 35}** Mr. Williamson asserts his trial counsel was ineffective in three respects: (1) failing to timely file and argue for waiver of mandatory fines; (2) failing to offer information regarding his codefendant's "much lighter" prison sentence in mitigation at sentencing; and (3) failing to object to Mr. Williamson's indefinite sentences as unconstitutional. Because our disposition of Mr. Williamson's second and third

assignments of error bear upon our analysis of his second and third ineffective assistance of counsel claims, we will address his claims in reverse order.

### a. Imposition of indefinite sentences.

**{¶ 36}** Mr. Williamson alleges his attorney was ineffective because he did not argue at sentencing that the indefinite sentencing structure of the Reagan Tokes Law is unconstitutional. As explained above in our analysis of Mr. Williamson's third assignment of error, the Supreme Court has since held that the challenged portions of the law are constitutional. It follows, then, that trial counsel's failure to challenge the constitutionality of a law now declared by a binding authority to be constitutional in all relevant respects does not constitute deficient performance.

### b. Disparity between Mr. Williamson's and his codefendant's sentences.

**{¶ 37}** As already outlined in our discussion of Mr. Williamson's second assignment of error, Mr. Williamson and his codefendant, Mr. Heglar, were both indicted with the same first-degree felony drug trafficking and first-degree felony drug possession offenses in connection with the same incident. Both pled guilty to a lesser-included trafficking offense: Mr. Williamson to a felony of the second degree and Mr. Heglar to a felony of the third degree. As a result of those their respective pleas, Mr. Williamson was sentenced to an indefinite prison term of 4 to 6 years, while Mr. Heglar received a sentence of community control.

**{¶ 38}** As part of his first assignment of error, Mr. Williamson generally raises an ineffective assistance of counsel claim relating to the disparity between these sentences. But because Mr. Williamson's argument in support is vague, cursory, and not supported by legal authority, it is not entirely clear what he believes constituted deficient performance by his trial counsel. In his assignment of error statement, Mr. Williamson posits that trial counsel was ineffective because "[h]e failed to offer the co-defendant's much lighter sentence *in mitigation* at sentencing, despite him committing the exact same offense." (Emphasis added.) (Brief of Appellant at v, 8.) This claimed error pertains to trial counsel's representation *before* the trial court pronounced Mr. Williamson's sentence. But, in the section of his brief meant to support that contention, Mr. Williamson instead argues that his trial attorney was ineffective because he "failed to argue * * * that [Mr.] Williamson's sentence was grossly disproportionate to [Mr. Heglar's]." (Brief of Appellant at 13.) This

claimed error relates to trial counsel's representation ***after*** the trial court pronounced Mr. Williamson's sentence. Without clearly resolving these discrepancies, Mr. Williamson contends that, had trial counsel raised the issue of disproportionate sentences, "the trial court could have considered" the issue. (*See* Brief of Appellant at 13.) On that speculative theory, Mr. Williamson proclaims that trial counsel's "[f]ailure to do so was prejudicially ineffective," without explaining why he believes that is so. (*See* Brief of Appellant at 13.)

{¶ 39} In any event, neither trial counsel's failure to offer Mr. Heglar's sentence during mitigation nor his failure to raise the disproportionate sentence issue after Mr. Williamson's sentence was imposed rises to the level of deficient performance—much less prejudice—that *Strickland* requires. Fatal to Mr. Williamson's deficient performance claim is the fact that Mr. Williamson pled guilty to a more serious felony offense than did Mr. Heglar. As a result of that plea, Mr. Williamson was subject to more severe penalties under Ohio law, as previously described. Mr. Williamson does not claim the disparate sentences are attributable to any action by the trial court that was unlawful or unconstitutional.

{¶ 40} Instead, Mr. Williamson alleges that Mr. Heglar was convicted of drug offenses in one case filed in 2006 and two cases filed in 2015. (Brief of Appellant at 16.) But, he does not explain how that history changes the fact that Mr. Heglar was sentenced for a lower-level felony offense than him. And, because the transcript from Mr. Heglar's sentencing hearing is not in the record before us, we cannot appreciably ascertain all mitigating factors presented at Mr. Heglar's sentencing hearing or otherwise understand the trial court's reasoning for imposing a community control sentence in that case. What is clear from the record before us, however, is that the trial court acted in accordance with Ohio law when it sentenced Mr. Williamson to an indefinite prison sentence of 4 to 6 years in case No. 19CR-5678.

{¶ 41} We further note that it was Mr. Williamson—not Mr. Heglar—who was indicted in two felony drug cases for criminal conduct that occurred within the span of approximately two months. Indeed, the state's uncontested recitation of facts at Mr. Williamson's plea and sentencing hearings indicated that Mr. Williamson was "the main subject of this investigation after selling crack cocaine to a confidential informant" on August 14, 2019. (*See* Plea Tr. at 13. *See also* Sentencing Tr. at 4.) Based on those observations in August, law enforcement seized Mr. Williamson and searched his car and

hotel room, ultimately recovering the drugs, firearms, and cash which formed the factual basis for Mr. Williamson's indictment in case No. 19CR-5970. (Plea Tr. at 13-14; Sentencing Tr. at 4, 9.) Approximately two months later, law enforcement conducted additional controlled buys from Mr. Williamson. (Sentencing Tr. at 4.) While executing the ensuing search warrant on Mr. Williamson's apartment on October 24, 2019, detectives encountered Mr. Heglar inside—along with narcotics and a large sum of cash. (*See* Plea Tr. at 12-13; Sentencing Tr. at 4-5, 9-10.) This incident resulted in the contemporaneous indictment of Mr. Williamson and Mr. Heglar in case Nos. 19CR-5678 and 19CR-5677, respectively. The trial court considered these facts when it sentenced Mr. Williamson. (*See* Sentencing Tr. at 8-10.)

{¶ 42} In light of these undisputed facts and Ohio's sentencing laws, it is to be expected that Mr. Williamson's plea to a higher-level felony offense would result in a more severe sentence than Mr. Heglar received. Accordingly, we find that Mr. Williamson fails to demonstrate either the deficient performance or prejudice *Strickland* requires to support this allegation of ineffective assistance of counsel.

### c. Waiver of mandatory fines.

{¶ 43} Mr. Williamson also alleges in his second assignment of error that his trial attorney was ineffective for failing to timely file and argue for waiver of mandatory fines due to Mr. Williamson's indigence. As a result of this failure, he claims, the trial court imposed a mandatory fine in the amount of $7,500 fine in case No. 19CR-5678 and a mandatory fine in the amount of $7,500 in case No. 19CR-5970.

{¶ 44} R.C. 2929.18(B)(1) requires a sentencing court to impose a mandatory fine in connection with certain offenses. The statute provides:

> For a first, second, or third degree felony violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section.

R.C. 2929.18(B)(1). *See also* R.C. 2925.03(D)(1). The maximum statutory fine amount authorized for a felony drug offense of the second degree is $15,000. R.C. 2929.18(A)(3)(b).

Thus, in accordance with R.C. 2929.18(B)(1), the minimum mandatory fine for a second-degree felony drug offense is $7,500.

{¶ 45} However, the mandatory fine statute further states that a sentencing court "shall not impose the mandatory fine upon the offender" if (1) the offender files an affidavit with the court ***before sentencing*** that alleges "the offender is indigent and unable to pay the mandatory fine," and (2) "the court determines the offender is an indigent person and is unable to pay the mandatory fine." R.C. 2929.18(B)(1). "For purposes of [mandatory fine waiver], being 'indigent' and being 'unable to pay' are not the same." *State v. Delgadillo-Banuelos*, 10th Dist. No. 18AP-729, 2019-Ohio-4174, ¶ 28. "Indigency concerns a defendant's current financial situation, whereas an inability to pay encompasses his future financial situation as well." *Id.*, citing *State v. Gipson*, 80 Ohio St.3d 626, 636 (1998). Accordingly, "[t]he burden is upon the offender to affirmatively demonstrate that he or she is indigent and unable to pay the mandatory fine." *Id.*, citing *Gipson* at 635.

{¶ 46} R.C. 2929.18(B)(1) does not set forth any particular factors that must be considered or specific findings that must be made when a sentencing court evaluates a defendant's present and future ability to pay a mandatory fine. *See Delgadillo-Banuelos* at ¶ 29, citing *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 76 (10th Dist.). Nonetheless, a sentencing court's decision to waive a mandatory fine pursuant to R.C. 2929.18(B)(1) must be supported by evidence in the record. *See id.* at ¶ 29. For instance, a presentence investigation ("PSI") report can provide financial, occupational, and personal information regarding the defendant relevant to a trial court's evaluation of the defendant's present and future ability to pay the mandatory fine. *See, e.g.*, *Delgadillo-Banuelos* at ¶ 29-30.

{¶ 47} In this case, the trial court advised Mr. Williamson about the financial consequences of his plea of guilty to two second-degree felony drug trafficking offenses during the plea colloquy. (Plea Tr. at 9.) At that time, Mr. Williamson's trial counsel indicated his intention to seek exception from the imposition of mandatory fines on account of Mr. Williamson's present and future inability to pay:

> If it's not the time for it -- but we ask the Court to find him statutorily indigent. He's a court-appointed defendant [sic], doesn't have the means to hire an attorney and therefore

> probably wouldn't have the means to pay the fine. ***But we would preserve that for the actual sentencing***.

(Emphasis added.) (Plea Tr. at 9-10.) Because sentencing was scheduled for a later date, the trial court did not make any findings regarding Mr. Williamson's present or future ability to pay the mandatory fines at the plea hearing.

{¶ 48} Critically, Mr. Williamson's trial counsel did not file an affidavit alleging Mr. Williamson was indigent and lacked the ability to pay the mandatory fine before sentencing in either case. In other words, Mr. Williamson's trial counsel failed to timely request waiver of the mandatory fines in the manner required by R.C. 2929.18(B)(1).

{¶ 49} At the sentencing hearing, the state asked the trial court to impose the mandatory fine for each count. (Sentencing Tr. at 6.) But during allocution, Mr. Williamson's trial counsel did not present any arguments or affidavit from Mr. Williamson regarding Mr. Williamson's current and future inability to pay the mandatory fines. (*See* Sentencing Tr. at 6-8.) Thus, the trial court imposed the minimum mandatory fine of $7,500 for each of the two second-degree felony drug trafficking offenses, for an aggregate mandatory fine of $15,000. (Sentencing Tr. at 11, 13.) It was not until ***after*** Mr. Williamson's sentences in both cases were pronounced that his trial counsel asked the trial court to waive the mandatory fines that had just been imposed:

| | |
|---|---|
| [DEF. COUNSEL]: | Your Honor, we would like you to find the Defendant indigent for purposes of a fine. * * * |
| THE COURT: | * * * As to finding indigent, if Counsel -- if you file something later with regards to mandatory drug fines, I generally require something more detailed than just the statement in court. It looks like he at least has been working. I don't know if you're retained or not. But I need more information before I waive any kind of -- |
| [DEF. COUNSEL]: | Yes. |
| THE COURT: | -- mandatory fine. Did you have anything else? |

> [PROSECUTOR]:  Judge, I think that in order for the Court to consider the waiver of mandatory fine, that that motion must be filed before sentencing.
>
> THE COURT:  All right. So, I'll let you file something and look at it, and I'll -- that's probably right. But off the top of my head, I don't remember that.

(Sentencing Tr. at 14-15.)  Because the trial court indicated it would entertain the issue only upon written motion, no additional evidence or findings regarding Mr. Williamson's present and future ability to pay the mandatory fines were addressed at that time.

{¶ 50}  We note the trial prosecutor correctly represented the law when she indicated that, for the mandatory fines to be waived, Mr. Williamson needed to file an affidavit that complied with R.C. 2929.18(B)(1) before sentencing.  Nonetheless, despite the trial court's expression of its willingness to consider waiving the mandatory fines, Mr. Williamson's trial counsel submitted nothing to the trial court on this issue following the conclusion of the sentencing hearing.

{¶ 51}  It is without question that trial counsel's failure to timely file a proper affidavit, in accordance with R.C. 2929.18(B)(1), constituted deficient performance.  At issue is whether such failure constituted prejudicial error under the facts and circumstances of this case.

{¶ 52}  Ohio courts have held that the failure to file an affidavit seeking waiver of mandatory fines constitutes ineffective assistance of counsel where the record shows a reasonable probability that the trial court would have found the defendant indigent and unable to pay the fine had the affidavit been filed.  *See, e.g.*, *Delgadillo-Banuelos*, 2019-Ohio-4174 at ¶ 28; *State v. Parsley*, 10th Dist. No. 09AP-612, 2010-Ohio-1689, ¶ 65; *State v. Seawright*, 8th Dist. No. 109489, 2021-Ohio-1100, ¶ 25-26; *State v. Holbrook*, 3d Dist. No. 1-21-32, 2021-Ohio-4362, ¶ 12-15; *State v. McElfresh*, 5th Dist. No. 20-COA-019, 2021-Ohio-480, ¶ 7-19.  *See also Davis*, 2020-Ohio-309 at ¶ 13-16 (addressing an ineffective assistance of counsel claim regarding failure to request waiver of court costs on behalf of a defendant previously found to be indigent).

{¶ 53}  Initially, we note that Mr. Williamson has been represented by appointed counsel since November 2019 in both of the underlying cases.  And, after he was sentenced

in February 2022, the trial court again determined Mr. Williamson was indigent, appointed appellate counsel, and waived transcript costs for appeal. Thus, multiple recent determinations have been made as to Mr. Williamson's indigent status under Chapter 120 of the Revised Code.

{¶ 54} We recognize that there is a difference between indigency for the purposes of receiving appointed counsel and inability to pay a mandatory fine. *See, e.g.*, *State v. Powell*, 78 Ohio App.3d 784, 789 (3d Dist.1992); *State v. Stevens*, 2d Dist. No. 2023-CA-20, 2023-Ohio-3510, ¶ 9. And we acknowledge that information regarding a defendant's finances is generally outside the record on direct appeal, meaning that the appropriate place to pursue this issue might instead be in a hearing for postconviction relief under R.C. 2953.21. *See, e.g.*, *State v. Warren*, 5th Dist. No. 18-CA-42, 2019-Ohio-2927, ¶ 99, citing *State v. Booker*, 63 Ohio App.3d 459, 466 (2d Dist.1989). Nonetheless, we find the record before us in this case shows a reasonable probability that the trial court would have found Mr. Williamson lacked the present and future ability to pay the mandatory fines had an affidavit of indigency been timely filed by his trial counsel.

{¶ 55} The financial disclosure forms filed shortly after Mr. Williamson was sentenced indicated that Mr. Williamson has no income or liquid assets. True, other Ohio appellate districts have found a financial disclosure form insufficient, ***alone***, to support waiver of mandatory fines under R.C. 2929.18(B)(1). *See, e.g.*, *McElfresh* at ¶ 12. But, on review, the financial disclosure forms filed in this case support a determination that Mr. Williamson lacked the ***present*** ability to pay the mandatory fines when he was sentenced.

{¶ 56} Moreover, Mr. Williamson indicated at the sentencing hearing that he had started a shoe customizing business and had been "helping out" at daycares. (*See* Sentencing Tr. at 8. *See also* Plea Tr. at 18.) But, on review of the transcript, it is unclear whether, and to what extent, such endeavors were economically profitable or voluntary. Suffice it to say, however, that because Mr. Williamson will be incarcerated for at least 7 years—and potentially up to 10.5 years—he will likely lack the ability to make any appreciable income for many years. Mr. Williamson's mandatory incarceration for 7 to 10.5 years clearly bears on his ***future*** ability to pay the mandatory fines.

{¶ 57} Some appellate districts have relied on information contained in a PSI, *see, e.g.*, *Warren* at ¶ 100-01, or arraignment transcript addressing bond, *see, e.g.*, *McElfresh*

at ¶ 10-17, as proof in the record showing a reasonable probability that the trial court would have waived the mandatory fine but for trial counsel's failure to file the required affidavit of indigency before sentencing. But, while a PSI was obtained prior to sentencing in this case (*e.g.* Sentencing Tr. at 2, 6), it has not been made part of the appellate record.[3] Neither are the transcripts from Mr. Williamson's arraignment in the two cases that are before us.

**{¶ 58}** In any event, we find the trial court's expression of its willingness to consider waiving the mandatory fines *after* Mr. Williamson's sentences were imposed favorable to his ineffective assistance claim. (*See* Sentencing Tr. at 14-15.) Indeed, despite the trial prosecutor arguing that Mr. Williamson's failure to file an affidavit seeking waiver of the mandatory fines before sentencing precluded relief under R.C. 2929.18(B)(1), the trial court stated it would "let [defense counsel] file something" and would "look at it." (Sentencing Tr. at 14-15.) True, the trial court indicated it "need[ed] more information before [it] waived any kind of * * * mandatory fine." (Sentencing Tr. at 14.) But requiring more information on Mr. Williamson's present and future ability to pay the mandatory fines goes to the deficient performance of trial counsel—not whether the trial court would have waived the mandatory fines had a proper affidavit been timely filed. We recognize, too, that even if defense counsel had filed the necessary waiver request after sentencing, as the trial court prompted him to do, the trial court may have nonetheless found that it could not waive the mandatory fines based on the timing requirement of R.C. 2929.18(B)(1). But, again, this only reinforces the deficiency of trial counsel's representation.

**{¶ 59}** What is significant, we believe, is that the trial court did not immediately foreclose the possibility it would waive the mandatory fines when trial counsel untimely sought waiver by oral motion. Instead, the trial court solicited defense counsel to file Mr. Williamson's affidavit for further consideration. Notable, too, is the trial court's decision to impose the mandatory *minimum* fine in both cases. When taken with the trial court's repeated determinations of Mr. Williamson's indigent status—for trial representation, appellate representation, and waiver of transcript costs—and given Mr. Williamson's

---

[3] Although the record on appeal for sentencing issues includes the PSI, the PSI is not formally made part of the record *by filing* because it is a confidential document. R.C. 2953.08(F)(1); R.C. 2951.03(D)(1) through (3). *See also State ex rel. Beacon Journal Publishing Co. v. Whitmore,* 83 Ohio St.3d 61, 66 (1998) (PSI is not a public record under R.C. 149.43). Thus, in order for a PSI to be made part of the record transmitted to this court for our review, the parties—typically, the appellant—must request that the PSI be transmitted with the record on appeal in a praecipe to the clerk or a motion to supplement the record. *See* App.R. 9.

impending incarceration of 7 to 10.5 years, we conclude the record supports Mr. Williamson's contention that there was a reasonable probability the trial court would have found he was presently unable—and would be unable—to pay the mandatory fines had a proper affidavit been timely filed pursuant to R.C. 2929.18(B)(1). As such, we find Mr. Williamson was prejudiced by trial counsel's deficient performance in this regard.

{¶ 60} Based on these facts and circumstances, we conclude trial counsel was ineffective in failing to timely move for waiver of the mandatory fines. Mr. Williamson's first assignment of error is, therefore, sustained as to his claim regarding the waiver of mandatory fines. His remaining ineffective assistance of counsel claims are not well-taken.

## III. CONCLUSION

{¶ 61} Having overruled Mr. Williamson's second and third assignments of error and sustained Mr. Williamson's first assignment of error as to his waiver of mandatory fines claim, we reverse, in part, the February 9, 2022 judgments of the Franklin County Court of Common Pleas imposing the mandatory fines. As to all other components of Mr. Williamson's sentences, these judgments are affirmed. Both causes are remanded to the trial court for a determination on whether waiver of the mandatory fines is appropriate under R.C. 2929.18(B)(1).

*Judgments affirmed, in part, and reversed, in part*;
*causes remanded.*

DORRIAN and BEATTY BLUNT, JJ., concur.